[Civil No. 2511. Filed November 22, 1926.]

[250 Pac. 770.]

FEDERAL RESERVE BANK OF DALLAS, a Corporation, Appellant, v. THE LIVESTOCK AND AGRICULTURAL LOAN COMPANY OF NEW MEXICO, a Corporation, Appellee.

Mr. Dave W. Ling, for Appellant.

Messrs. Chalmers, Stahl, Fennemore & Longan and Mr. Luther P. Spalding, for Appellee.

ROSS, J.—This case involves the question as to which of two chattel mortgages given by R. S. Johnson, of Clifton, Greenlee county, Arizona, on his livestock (and brands) ranging in said county, is a first and prior lien on the mortgaged property. The one to appellee, the Livestock & Agricultural Loan Company of New Mexico (hereinafter referred to as Loan Company) for $20,000, is dated June 5, 1922, and was recorded July 17, 1922; and the other to the First National Bank of Clifton, and assigned to appellant Federal Reserve Bank of Dallas (hereinafter referred to as Reserve Bank) for $7,000, is dated September 1, 1922, and was recorded September 9, 1922. The question was decided by the trial court in favor of the mortgage first in date and record, that is, the one to the Loan Company.

The appellant Reserve Bank contends that such mortgage is so defective as to be of no legal force or effect except as between the parties thereto, and that therefore its mortgage lien is first and superior. The defect, it is said, consists in the failure to set out in the mortgage, in accordance with the requirements of paragraph 4124, Civil Code of 1913, "where" the sum secured is payable.

Said paragraph enumerates several things that a chattel mortgage should contain to be of force and effect as to third persons. It is conceded by the Reserve Bank that the mortgage contains all the particulars enumerated by the statute except the one of "where payable," and the Loan Company insists that this particular is present because "the instrument . . . contains within its four corners the information" as to where it is payable, we having said where that appears it is sufficient compliance with the statute. *Garner* v. *Arizona Egyptian Cotton Co.*, 22 Ariz. 318, 197 Pac. 231.

The property mortgaged was located in Greenlee county, Arizona. The note and mortgage bear the

same date, June 5, 1922, and the mortgagor's acknowledgment and affidavit of *bona fides* are dated June 5th, at Clifton, Arizona, and both instruments were on that day, according to stipulation of the parties, "made, executed and delivered."

The mortgage describes the note as being of even date, for $20,000, money loaned by the Loan Company to Johnson, bearing interest at seven and one-half per cent per annum and payable one year after date; it gives the residence of the mortgagor and maker of note (Johnson) as Clifton, Greenlee county, Arizona, and of the mortgagee and payee of note (Loan Company) as Albuquerque, New Mexico. It does not state where it, or the note it was given to secure, is payable.

We have had the question of the effect of paragraph 4124 upon mortgages, wherein the place of payment of the debt secured was not set out in the mortgage in words and figures, in two cases: *Garner* v. *Arizona Egyptian Cotton Co., supra,* and *Steinfeld & Co.* v. *Southern Arizona Bank & Trust Co.,* 28 Ariz. 242, 236 Pac. 713. In the Garner case we held that from the whole context of the instrument the place of payment of the sum secured sufficiently appeared; that it was not necessary that the place of payment be expressly set out in the mortgage if from the whole context thereof the law could step in and by implication fix the place of payment. The facts in the Garner case were that the promisor and promisee of the mortgage notes were the same persons, both residing in Maricopa county, where the property was situate; that the instruments were executed on the same date, and the mortgage was verified before a notary public of said county and recorded therein. In the Steinfeld case it appeared that the description of the notes set out in the mortgage did not show who the maker or payee of the notes was, or where the notes were executed and

delivered, or where the maker or payee, or either of them, resided. We said:

" 'The sum to be secured' is represented by the notes. The giving of security is but an incident to the debt and one of the means of securing its payment. The mortgagor, as a matter of fact, may not be the maker of the note. There is no reason why a party may not mortgage his property, and it is sometimes done, to secure the debt of another person. Likewise the mortgagee may not be the payee of notes; it may have become the owner through discounting them. The notes, so far as appears, may have been dated and made and delivered in New York. . . . ''

Because there was no statement in the mortgage from which it could be determined where the notes, as a matter of law, were payable, we held the facts did not bring the mortgage within the rule of the Garner case. It was, however, said:

"If it appeared that the appellee [mortgagee] was the payee of the notes, we could, under the rule in the Garner Case, indulge the legal inference that the place of payment was at its place of business or banking house in Tucson, Pima county. Under paragraph 4124, the requirement seems to be that the mortgage shall state where the sum to be secured is payable.''

The facts in this case are identical with the facts in the Garner case, except here the payee of note and mortgage is a nonresident of this state. In neither mortgage was the place of payment literally set out. Is the difference sufficient to make the rule of the Garner case inapplicable? We think not. In the Garner case we indulged the presumption from all the facts appearing in the mortgage that the note it secured was payable in Maricopa county, where the property was situate and where the parties to notes and mortgage resided. This presumption was allowed, notwithstanding the notes might have spoken

otherwise, because we thought the terms of the mortgage fairly met the conditions of the statute. In that case it was said, quoting from a New Jersey case (*American Soda Fountain Co.* v. *Stolzenbach,* 75 N. J. L. 721, 127 Am. St. Rep. 822, 16 L. R. A. (N. S.) 703, 68 Atl. 1078):

"In the absence of fraud, instruments so common in the course of commercial transactions by the laity should be sustained whenever there is an honest and substantial compliance with the statute. Criticisms directed to matters of artifice rather than to those of substance ought not to prevail."

We are of the opinion that in these cases (Garner and the present one) the compliance with the statute is so substantial that anyone seeking information as to the place of payment can quite as readily discover it by an inspection of the mortgage as if it were literally set out therein. The purpose of such requirement can be none other than one of notice and to protect parties from secret and fraudulent liens. If a second mortgagee can take the property from the first mortgagee upon such an unsubstantial defect as here displayed, a designing and corrupt property owner would have only to find some one to co-operate with him in drafting, executing, and recording a simulated second mortgage when for any reason an immaterial and formal omission occurred in the first mortgage, and thereby consume the entire security of the first mortgage.

We feel quite certain there was no collusion here between the mortgagor and the second mortgagee, but the description of the mortgaged property in the second mortgage is so like the description of the property in the first mortgage that one may with almost absolute certainty assert the former was copied from the latter. The second mortgagee, then, not only had constructive notice of the first mortgage, but must have had actual notice. From the

fact that the second loan was made with full knowledge of the first, together with the fact that the defect in the first mortgage is more factitious than substantial, more illusive than real, we conclude the Loan Company's mortgage is good as against the mortgage of the Reserve Bank.

Upon the facts in this case we give force to the usual legal presumption that the debt secured by the mortgage is payable where the payer of note and mortgage resides or has his place of business, the rule in that regard being, as stated in *Bardsley* v. *Washington Mill Co.*, 54 Wash. 553, 132 Am. St. Rep. 1133, 103 Pac. 822, as follows:

"There is, however, a principle of law sufficient for this purpose which we regard as fixing the place of payment of this note and interest thereon with equal certainty as if specifically named by its express terms. In 1 Daniel on Negotiable Instruments (5th Ed.), § 90, the rule is laid down that, 'where no place of payment is expressed in a note the place of payment is understood to be where the maker resides.' And the Supreme Court of the United States in the case of *Cox* v. *National Bank*, 100 U. S. 704, 712, 25 L. Ed. 739 (see, also, Rose's U. S. Notes), uses this language: 'Where no place of payment is expressed in a bill or note, the general rule, in the absence of any agreement or circumstance fixing or indicating a different intention, is that the place of presentment is the place where the acceptor or maker resides, or at their usual place of business.' "

The rule as to the place of payment of a note, when not named therein, differs according to the facts of each case; but we think the correct rule upon facts similar to the ones here is stated in the above case. 3 R. C. L. 911, § 100; 8 C. J. 567, § 790.

We conclude that the judgment of the lower court should be affirmed, and it is so ordered.

McALISTER, C. J., and LOCKWOOD, J., concur.